**UNITED STATES of America, Appellee,**

v.

**Joe Uriel BEDOYA, Appellant.**

**No. 1314, Docket 89–1658.**

United States Court of Appeals, Second Circuit.

Submitted May 18, 1990.

Decided July 13, 1990.

Joe Uriel Bedoya, pro se.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Peter A. Norling, David C. James, Asst. U.S. Attys., for appellee.

Before OAKES, Chief Judge, PIERCE and PRATT, Circuit Judges.

OAKES, Chief Judge:

Joe Uriel Bedoya, pro se and in forma pauperis, appeals that portion of a second amended judgment of the United States District Court for the Eastern District of New York, Raymond J. Dearie, Judge, entered on November 22, 1989, that reimposed a five-year term of supervised release as part of Bedoya's sentence following his guilty plea to a charge of importing in excess of five hundred grams of cocaine

into the United States on January 8, 1987, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(2)(B)(ii) (1988). Bedoya argues that this penalty of supervised release was inapplicable to his offense at the time of its commission. We agree, vacate the sentence, and remand for resentencing in accordance with this opinion.

The district court sentenced Bedoya on April 29, 1987, to a five-year term of imprisonment, the five-year term of supervised release at issue in this appeal, a $10,000 fine and a $50 special assessment. Bedoya moved the district court on April 20, 1989, pursuant to the former version of Fed.R.Crim.P. 35(a),[1] to correct his sentence by deleting the term of supervised release. Bedoya argued that the supervised release provisions, as enacted by the Anti–Drug Abuse Act of 1986 ("the 1986 amendment"), Pub.L. No. 99–570, 100 Stat. 3207, did not go into effect until November 1, 1987, when the standards for supervised release, codified at 18 U.S.C. § 3583 (1988), were enacted. He moreover urged that even if the court were instead to apply the special parole provisions included in the statute prior to modification by the 1986 amendment, he would not be subject to a special parole term, since the statute as amended in 1984 expressly authorized special parole terms only for violations involving under one thousand grams of cocaine, but not for violations involving greater than one thousand grams. Arguing that he was found importing 1,186 grams of cocaine, Bedoya urged the court to vacate the supervised release term without imposing a special parole term in its place.

The Government initially agreed with Bedoya and consented to modification of the sentence, without replacement of the term of supervised release with a period of special parole. The district court thereafter deleted the period of supervised release and entered an amended judgment on May 23, 1989. On October 19, 1989, however, the Government changed its position and argued that although the supervised release term was unauthorized at the time of Bedoya's offense, a special parole term should have been imposed in its place. The Government stated that the charge to which Bedoya had pleaded guilty involved the importation of only an amount "in excess of 500 grams" of cocaine into the United States, even though the actual amount Bedoya had been found with was in excess of 1000 grams.[2] The district court, "[f]or the reasons stated in the letter," again modified its judgment, but without explanation reinstated the five-year term of supervised release, rather than the special parole recommended in the Government's letter. The second amended judgment, from which this appeal lies, was entered on November 22, 1989.

There has been much recent litigation over the intricacies of the multiple amendments to the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Comprehensive Act"), Pub.L. No. 91–513, 84 Stat. 1437. Given the very confusing and somewhat irregular history of the Comprehensive Act, we find it necessary to review the evolution of the provisions in some detail.

Prior to 1984, a section of the Comprehensive Act, the Controlled Substances Import and Export Act ("Import and Export Act"), which is codified at 21 U.S.C. §§ 951–71 and governs Bedoya's offense, provided for a bifurcated penalty scheme. For offenses involving importation of the more harmful controlled substances, such as heroin and cocaine, it authorized a sentence of up to 15 years' imprisonment

---

1. This former version is applicable to offenses committed prior to November 1, 1987, and authorizes a district court to correct an illegal sentence at any time. *See* Fed.R.Crim.P. 35(a) as in effect prior to amendment by Pub.L. No. 98–473, § 215, 98 Stat. 1837, 2015–16 (1984).

2. This seeming anomaly was likely the result of the 1986 amendment, which changed from 1000 grams to 500 grams the amount of cocaine necessary to trigger the enhanced penalty provi-

sions appropriate to Bedoya's offense. *Compare* 21 U.S.C. § 960(b)(1)(B) (Supp. III 1985) *with* 21 U.S.C. § 960(b)(2)(B) (1988). Because Bedoya was charged under the version of the Act as modified by the 1986 amendment, he was charged with importing only that amount of cocaine that was relevant under the Act (500 grams), rather than the full actual amount of 1,186 grams involved in his offense.

and/or up to a $25,000 fine, and allowed imposition of a special parole term of not less than three years to accompany sentences including imprisonment. *See* 21 U.S.C. § 960(b)(1) (1982). Offenses involving importation of all other substances were governed by less stringent penalty provisions. *See* 21 U.S.C. § 960(b)(2) (1982). The Import and Export Act as then in effect moreover specified the conditions of special parole terms. *See* 21 U.S.C. § 960(c) (1982).

On October 12, 1984, Congress enacted the Comprehensive Crime Control Act of 1984 ("the 1984 amendment"), Pub.L. 98–473, 98 Stat. 1837, which, among other things, amended the Import and Export Act by including enhanced penalty provisions for offenses involving importation of greater amounts of controlled substances. In particular, it provided that persons convicted of importing an amount of cocaine in excess of 1000 grams would be subject to up to 20 years' imprisonment and/or up to a $250,000 fine. *See id.* § 504, 98 Stat. at 2070, codified at 21 U.S.C. § 960(b)(1)(B) (Supp. II 1984). Apparently in anticipation of forthcoming deletions of provisions authorizing special parole terms, Congress chose not to authorize imposition of a special parole term under this enhanced penalty provision. However, it continued to authorize (perhaps due to an oversight) special parole terms of not less than three years for offenses involving importation of lesser quantities of cocaine (to accompany sentences which included terms of imprisonment up to 15 years). *See* 21 U.S.C. § 960(b)(2) (Supp. II 1984). The 1984 amendment moreover provided that the subsections in the Act that still authorized special parole terms, 21 U.S.C. § 960(b)(2) and 960(b)(3), as well as the provision specifying the conditions of special parole, 21 U.S.C. § 960(c), would be deleted as of November 1, 1987, *see* Pub.L. No. 98–473 §§ 225(a), 235(a)(1), 98 Stat. at 2030–31, presumably to coincide with when the conditions for supervised release would be enacted by the United States Sentencing Commission.

Before this deletion could take effect, however, Congress on October 27, 1986, enacted the 1986 amendment to the Comprehensive Act, Pub.L. No. 99–570, 100 Stat. 3207. Section 1302 of the 1986 amendment, Pub.L. No. 99–570 § 1302, 100 Stat. at 3207–15 to 3207–18, modified the Import and Export Act by including an additional enhanced penalty provision: for offenses involving, *inter alia*, importation of 1 kilogram or more of a substance containing heroin, or of 5 kilograms or more of a substance containing cocaine, Congress authorized mandatory minimum terms of 10 years' imprisonment, a substantial fine, and at least 5 years of supervised release. *See* 21 U.S.C. § 960(b)(1) (1988). Section 1302 of the 1986 amendment also modified the Import and Export Act by striking the previous enhanced penalty provision, and replacing it with one that was much like the previous, but that required an offense to involve the importation of cocaine in the amount of only 500 grams (rather than the previous 1000 grams, *see* 21 U.S.C. § 960(b)(1)(B) (Supp. III 1985)) to trigger its penalty provisions, which now authorized a term of supervised release of not less than four years as part of a sentence including a mandatory five-year term of imprisonment. *See* 21 U.S.C. § 960(b)(2) (1988). Finally, section 1302 of the 1986 amendment struck the previous provision governing offenses involving importation of the more harmful substances in any quantity, *see* 21 U.S.C. § 960(b)(2) (Supp. III 1985), and replaced it with a similar provision that authorized imposition of a supervised release term of at least three years in addition to a term of imprisonment. *See* 21 U.S.C. § 960(b)(3) (1988).

Following the enactment of the 1986 amendment, much confusion arose as to its effective date. In addition to its provisions noted in the above paragraph, section 1004 of the 1986 amendment obfuscated matters greatly by stating that all previous references to "special parole term" would be altered to "term of supervised release," effective November 1, 1987. *See* Pub.L. No. 99–570 § 1004, 100 Stat. at 3207–6. But because section 1302 of the 1986 amendment had simply deleted and replaced one of the paragraphs which, under

the previous version of the Act, had contained references to special parole terms, *see* 21 U.S.C. § 960(b)(2) (Supp. III 1985), the only remaining reference to special parole terms, as of November 1, 1987, was in the provision now (after the 1986 amendment) codified in 21 U.S.C. § 960(b)(4) (Supp. IV 1986).

To attempt to make sense of a nearly incomprehensible situation, courts have read the effective date specified in section 1004(b)—November 1, 1987—as applying only to section 1004(a) (and therefore to the amendment of 21 U.S.C. § 960(b)(4)), and have held that all other provisions of the 1986 amendment (thus including the provisions now codified in 21 U.S.C. § 960(b)(1), (b)(2), and (b)(3)) are deemed to take effect on their date of enactment, October 27, 1986. *See, e.g., United States v. Levario,* 877 F.2d 1483, 1487–89 (10th Cir.1989); *United States v. Padilla,* 869 F.2d 372, 381–82 (8th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989).

This, however, created an anomalous situation, because for offenses (such as Bedoya's) that were committed after October 27, 1986, but before November 1, 1987, courts could impose supervised release terms, pursuant to 21 U.S.C. § 960(b)(1), 960(b)(2), or 960(b)(3) (as modified by the 1986 amendment), even though the conditions for supervised release had not yet been enacted by the United States Sentencing Commission. Again attempting to make sense of the maze of statutory oversights, recent courts began holding that the imposition of supervised release terms for offenses committed prior to November 1, 1987, was unauthorized, notwithstanding the express statutory language, and that special parole terms should be imposed in their place. *See, e.g., Mercado v. United States,* 898 F.2d 291, 292 (2d Cir.1990) (per curiam); *United States v. Whitehead,* 849 F.2d 849, 860 (4th Cir.), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); *United States v. Smith,* 840 F.2d 886, 889–90 (11th Cir.), *cert. denied,* 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988); *United States v. Byrd,* 837 F.2d 179, 181–82 (5th Cir.1988).

■ Having waded through this statutory history, we note that Bedoya's offense was one of those that fell between the effective date of most provisions of the 1986 amendment (October 27, 1986), and November 1, 1987. Following the strong authority cited above that has held that no supervised release terms are authorized for such offenses, we vacate the district court's imposition of such a term in its second amended judgment against Bedoya.

■ Nevertheless, we think that the district court has authority to impose a special parole term upon Bedoya in place of the supervised release term. Contrary to Bedoya's suggestion, it is immaterial whether his offense is deemed for sentencing purposes to involve importation of cocaine in an amount greater than 500 grams (the charge to which he pleaded guilty), or the 1,186 grams he actually was found importing. For offenses committed after October 27, 1986, but before November 1, 1987, we conclude that courts may impose special parole terms in place of the authorized supervised release terms, but that rather than looking back to the Act's penalty scheme as it existed prior to the 1986 amendment to determine when special parole terms are authorized, they may simply substitute special parole terms for whatever length of time and under whatever circumstances supervised release terms are authorized by the 1986 amendment.

Because Bedoya's offense took place after section 1302 of the 1986 amendment was enacted, we consider 500 grams (not the previous 1000 grams) to be the proper trigger amount for the penalty provision governing his offense. The district court may therefore simply impose a term of special parole in place of the supervised release term authorized in the statute.

Judgment vacated and cause remanded for sentencing not inconsistent with this opinion.